# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ACCORDIA LIFE AND ANNUITY COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1461 |
| | § | |
| LESLIE A. SHYVERS, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion to dismiss the complaint in intervention under Rules 12(b)(1) and 12(b)(6) filed by defendants Grist Mill Trust Welfare Benefit Plan (the "Plan") and Kathleen Kehoe, in her capacity as Trustee of the Grist Mill Trust Welfare Benefit Plan (the "Trustee") (collectively, the "Plan Defendants") (Dkt. 11); (2) a motion to strike immaterial, impertinent, and scandalous statements in the amended counterclaims in rem and original crossclaims filed by the Plan Defendants (Dkt. 33); and (3) an amended motion to dismiss the amended counterclaims in rem and the original crossclaims filed by defendants Leslie A. Shyvers and Jo. M. Pollack, M.D., P.A. (the "Pollack Co.") (Dkt. 34). After reviewing the motions, related filings, and the applicable law, the court is of the opinion that the motion to dismiss the complaint in intervention and the motion to strike should be DENIED, and the amended motion to dismiss the amended counterclaims in rem and the original crossclaims should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

This case was initiated as an interpleader action by Accordia Life and Annuity Company ("Accordia"). Dkt. 1. Accordia filed the interpleader against Shyvers, the Pollack Co., and the Plan

Defendants. *Id.* It contends that the Pollack Co. adopted the Plan to provide benefits to its employees, including Shyvers, who obtained an adjustable premium life insurance policy with Indianapolis Life Insurance Company (the "Policy") that named the Trustee as the owner and beneficiary. *Id.* After various acquisitions of insurance companies, Accordia eventually became the insurer and obligor for the Policy. *Id.* On November 17, 2016, the Plan, via the Trustee, requested that Accordia surrender the Policy for full surrender value. On December 21, 2016, Shyvers and the Pollack Co. made a formal claim on behalf of Shyvers to the rights and benefits of the Policy. *Id.* In light of the competing claims, Accordia did not surrender the Policy and instead filed this interpleader action in which it asks the court to resolve the dispute. *Id.*

The Plan Defendants filed a motion to dismiss on June 26, 2017. Dkt. 11. They argue that the court does not have jurisdiction because Accordia did not deposit the fund that is in dispute with the court. *Id.* Accordia has since remedied this issue. *See* Dkts. 14, 23, 25. The Plan Defendants also argue that the interpleader action should be dismissed because Accordia failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 11. Accordia responds that an interpleader action is not dependent on the merits of the adverse claims and is instead designed to protect the stakeholder. Dkt. 16. The Pollack Co. and Shyvers joined in Accordia's response to the Plan Defendants' motion to dismiss. Dkt. 18. The Plan Defendants filed a reply in which they point out that a state court of appeals held, in a case involving Jo Pollack individually as well as the Pollack Co. relating to the same type of plan, that the Plan was the owner of the Policy primarily because Pollack executed documents indicating that the Plan was the owner and beneficiary and Pollack had not presented any summary judgment evidence indicating that she was prevented from reading the documents by trick or artifice. *Id.* (citing Dkt. 21, Ex. E).

On June 30, 2017, Shyvers and the Pollack Co. filed an answer and a counterclaim *in rem*. Dkt. 12. The counterclaim alleges that while the Plan is named the owner of the Policy, it holds it in trust exclusively for the beneficial owner, in this case, Shyvers. *Id.* The counterclaim asserts that the insurance agents promoted and marketed the Plan as a way to save for retirement that would allow a tax deduction. *Id.* Shyvers and the Pollack Co. contend that they were supposed to be the equitable beneficiaries of the policies in the Plan. *Id.* Eventually, however, the Pollack Co. was audited and had to pay taxes and penalties for participating in the Plan. *Id.* Shyvers and the Pollack Co. assert claims against Accordia for negligent misrepresentation, fraudulent misrepresentation, negligence, unjust enrichment, and money had and received, and they seek a declaratory judgment. *Id.*

On July 18, 2017, the Plan Defendants filed a motion to dismiss Shyvers and the Pollack Co.'s counterclaim *in rem*. Dkt. 19. On August 3, 2017, Shyvers and the Pollack Co. amended their answer and counterclaim and added crossclaims against the Plan. Dkt. 24. The amended counterclaim notes the holding by the state appellate court in the case involving Pollack as an individual but states that the ruling was on a "limited issue." *Id.* It asserts the same counterclaims against Accordia—negligent misrepresentation, fraudulent misrepresentation, negligence, unjust enrichment, and money had and received. *Id.* It also asserts these claims against the Plan and adds a breach of fiduciary duty and a breach of contract claim against the Plan. *Id.*

On August 18, 2017, the Plan Defendants moved to strike the amended answer, counterclaim, and cross claim. Dkt. 33. They also amended their July 18 motion to dismiss the counterclaims in rem. Dkt. 34. The current live motions are the Plan Defendants' motion to dismiss Accordia's complaint in intervention (Dkt. 11), the Plan Defendants' motion to strike Shyvers and the Pollack Co.'s amended counterclaim and original crossclaim (Dkt. 33), and the Plan Defendants' motion to

dismiss Shyver and the Pollack Co.'s amended counterclaim and original crossclaims (Dkt. 34); these motions are all ripe for disposition.

## II.  MOTION TO DISMISS COMPLAINT IN INTERVENTION

First, the Plan Defendants argue that the court does not have jurisdiction because Accordia did not deposit the funds into the court's registry.  Dkt. 11.  Accordia deposited the funds on August 4, 2017.  *See* Dkt. Entry (Aug. 4, 2017).  Accordingly, to the extent the motion to dismiss relies on this argument, the motion to dismiss is **DENIED AS MOOT**.

The Plan Defendants also argue that (1) there is no colorable claim by Shyvers and the Pollack Co. because the Plan is the legal owner of the Policy; and (2) Accordia did not timely file its complaint in intervention.  Dkt. 11.  The Plan Defendants contend that the Declarations of Trust establishing the Plan, the documents Shyvers and the Pollack Co. executed adopting the Plan, and the application for the Policy all identify the Plan as the Owner and that Shyvers and the Pollack Co. thus have no claim.  *Id.*  With regard to timing, the Plan Defendants contend that Accordia failed to timely file its complaint in intervention because it waited five months after receiving competing claims to file its complaint in intervention.  *Id.*

Accordia responds that its interpleader complaint alleges ample facts showing that it had a legitimate fear that the defendants' completing claims may expose it to liability or litigation with respect to the property at stake.  Dkt. 16.  It contends that it is "axiomatic that Accordia, the interpleader plaintiff, was not required to (and could not) decide the merits of the claims before filing the interpleader."  *Id.*  It asserts that it was required only to have a good faith belief that there were multiple colorable claims to the fund, and this good faith can be established not only because there are competing assertions against the Policy but also because virtually similar claims were originally granted by a state district court in a similar state court interpleader filed by Penn Mutual Life

Insurance Company involving the Trustee, the Pollack Co., and Jo Pollack as an individual. *Id.* (citing *Kehoe v. Pollack*, 526 S.W.3d 781 (Tex. App.—Houston [14th Dist.] 2017, no pet. h.). As far as the allegation that the complaint was not timely filed, Accordia contends that it was not contractually obligated to make payment under the initial surrender request until May 17, 2017, it was permitted time to determine if conflicting claims actually existed, and it was also entitled to explore settlement before filing to avoid costs. *Id.* Accordia contends that it acted in good faith while investigating whether there were colorable competing claims and that it had a reasonable good faith basis to believe the claimants might resolve the issue before it filed the interpleader complaint. *Id.*

## A.   Legal Standard

Under 28 U.S.C. § 1335, district courts have original jurisdiction of any civil action in the nature of interpleader that is filed "by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more" if there are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the money or property and the plaintiff has deposited the money or property into the registry of the court. 28 U.S.C. § 1335(a). "The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund." *Rhoades v. Casey*, 196 F.3d 592, 600 n.8 (5th Cir. 1999) (quoting *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992)). "An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* at 600 (citing Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1714 (1986)). If the requirements for interpleader have been met, then the

5

district court must "make a determination of the respective rights of the claimants." *Id.* If there is no issue of material fact regarding entitlement to the fund, the second stage may be adjudicated at summary judgment. *Id.*

"An interpleader action is designed to protect a stakeholder, *as such*, from the possibility of multiple claims upon a single fund." *In re Bohart*, 743 F.2d 313, 324 (5th Cir. 1984). The interpleader statutes and rules are thus "'liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect [it] from double liability.'" *Id.* at 325 (quoting *N.Y. Life Ins. Co. v. Welch*, 297 F.2d 787, 790 (D.C. Cir. 1961)). A party seeking interpleader must demonstrate that it is entitled to interpleader. *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974). The party must show that it "has been or may be subjected to adverse claims." *Id.* "Jurisdiction is not dependent on whether the claim for relief is meritorious; the federal courts lack jurisdiction only if the claims are plainly frivolous or 'patently without merit.'" *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir., Unit A, 1981) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 70–72, 98 S. Ct. 2620 (1978)).

## B.    Analysis

Here, Accordia's complaint sets forth sufficient reason for it to have had a good faith belief that there were colorable competing claims to the Policy. And, Accordia's complaint was timely filed. Accordia was not contractually obligated to even process and make the payment on the demand for six months, and it filed its intervenor complaint before this time lapsed. *See* Dkt. 15-1, Ex. 1 at 14 ("We may delay payment, except to pay premiums on other policies with us, for up to six months after we receive the surrender request."). The Plan Defendants' motion to dismiss the intervenor complaint (Dkt. 11) is **DENIED**.

6

### III. MOTION TO STRIKE

The Plan Defendants also move, pursuant to Federal Rule of Civil Procedure 12(f), for the court to strike "offensive statements" in paragraphs 9, 17, 18, 40, 41, and 42 of the amended counterclaims in rem and original crossclaims filed by Shyvers and the Pollack Co. Dkt. 33. Shyvers and the Pollack Co. oppose the motion, arguing that the statements the Plan Defendants seek to have stricken are directly relevant to this case and "are true and they are blase, rather than scandalous." Dkt. 35.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). A matter is not considered "scandalous" under Rule 12(f) merely because it "offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action . . . ." *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005); *see also United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012) ("Although the disputed pleadings might 'offend[] the sensibilities' of [the defendant] and her attorneys, those pleadings are not scandalous because they are directly relevant to the controversy at issue and are minimally supported in the record. (quoting *In re Gitto Global Corp.*)).

> [I]t is well established that the action of striking a pleading should be sparingly used by the courts. . . . It is a drastic remedy to be resorted to only when required for the purposes of justice. . . . The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *see Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (quoting the same language from *Brown*). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993).

## B.    Analysis

Paragraph 9 alleges that the Plan is "an entity of some sort founded by Daniel Carpenter." Dkt. 24 ¶ 9.  Paragraph 17 discusses an alleged undercover investigation by the Internal Revenue Service ("IRS") of the Plan and other Daniel Carpenter-owned welfare benefit plans.  *Id.* ¶ 17. Paragraph 18 provides an excerpt of testimony from an affidavit filed in a criminal proceeding relating to statements made by a Plan representative.  *Id.* ¶ 18.  Paragraphs 40 through 42 relate to the Plan's offices allegedly being raided by the IRS and Daniel Carpenter being jailed and convicted of numerous counts of mail fraud.  *Id.* ¶¶ 40–42.

The Plan Defendants argue that the documents in this case demonstrate that Daniel Carpenter was never the Trustee or Plan Sponsor.  Dkt. 33.  Additionally, they contend that the IRS investigation concluded in 2014 and found no liability.  *Id.*  They assert that the investigation is "wholly irrelevant to the issues in the present case" and the search and seizure discussed has nothing to do with the Plan.  *Id.*  They also contend that the excerpt from the affidavit is unlawfully disclosed as it is from a document that was sealed.  *Id.*

In response, Shyvers and the Pollack Co. provide a court order from a federal court in the Southern District of New York that finds that Carpenter controlled the Plan along with other entities. Dkt. 35 (citing *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11CV1590-LTS-HBP, 11CV8726-

LTS-HBP, 2014 WL 3883371 (S.D.N.Y. Aug. 7, 2014) (noting in its findings of fact that the court had already found that Carpenter controlled the Grist Mill Trust Welfare Benefit Plan from May 2009 to October 2010)).

The Plan Defendants have not met their burden of showing that the material has "no possible relation" to this controversy. In fact, many of the allegations in the cited paragraphs are central to the alleged fraudulent scheme. The Plan Defendants' motion to strike is therefore **DENIED**.

### IV. MOTION TO DISMISS SHYVERS AND THE POLLACK CO.'S AMENDED COUNTERCLAIM AND ORIGINAL CROSSCLAIMS

The Plan Defendants next move to dismiss the amended counterclaims in rem and original crossclaims filed by Shyvers and the Pollack Co. under Rules 9(b) and 12(b)(1), (2), and (6). Dkt. 34. They contend that (1) there is no colorable claim; (2) the complaint in interpleader is untimely; (3) statutory interpleader is an inadequate basis for subject matter jurisdiction and personal jurisdiction over the crossclaims; (4) none of the crossclaims are plausible; and (5) the fraud counterclaim and crossclaims is not pleaded with particularity. *Id.*

Shyvers and the Pollack Co. respond primarily that the court may exercise supplemental jurisdiction over crossclaims in an interpleader action. Dkt. 37. With regard to the argument that they have not pled plausibly pled their claims and not pled fraud with particularity, Shyvers and the Pollack Co. argue that all of their claims are plausible, they have pled with the required particularity; they seek leave to amend if the court disagrees. *Id.*

### A. No Colorable Claim and Timeliness

The Plan Defendants assert that there is no colorable claim in Accordia's complaint regarding Shyvers's or the Pollack Co.'s entitlement to the policy and that the court should therefore dismiss the whole lawsuit. Dkt. 34 (incorporating the arguments made in the Plan Defendants' motion to

dismiss the interpleader). They also contend the complaint was not timely filed. *Id.* Shyvers and the Pollack Co. point out that the Pollack Co. paid all the contributions into the trust and that the Plan administrator's "unwritten policy" is that beneficiaries are entitled to the cash surrender value of their policies in exchange for a ten percent fee. Dkt. 37. The court has already ruled that it has jurisdiction and that the case was timely filed. Therefore, the motion to dismiss Shyvers and the Pollack Co.'s claims based on the alleged lack of viability of the interpleader action is **DENIED**.

**B.    Jurisdiction Over Crossclaims**

The Plan Defendants argue that a "federal interpleader action does not authorize consolidation of all related tort actions into a single action." Dkt. 34 at 3 (citing *State Farm Fire & Cas. Co. v. Tahire*, 386 U.S. 523, 87 S. Ct. 1199 (1967)). They point out that 28 U.S.C. § 1335, which Shyvers and the Pollack Co. cite as the basis for subject matter jurisdiction over the crossclaims, is limited to interpleader jurisdiction. *Id.* Additionally, they argue 28 U.S.C. § 2361, which that Shyvers and the Pollack Co. cite for personal jurisdiction, relates to the process and procedure for statutory interpleader actions and is not a basis for asserting personal jurisdiction. *Id.* The Plan Defendants therefore seek dismissal of the crossclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack of subject matter and personal jurisdiction . *Id.*

With regard to subject matter jurisdiction, Shyvers and the Pollack Co. contend that the case relied upon by the Plan Defendants predates the statute that authorizes crossclaims in interpleader cases—28 U.S.C. § 1367. Dkt. 37 at 2. This is the supplemental jurisdiction statute, which confers district courts that have original subject-matter jurisdiction with supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). With regard to personal jurisdiction, Shyvers and the Pollack Co. contend that a Texas

state court has already found that the Plan is subject to personal jurisdiction in Texas. *Id.* (citing Dkt. 37, Ex. 1). The court will first address subject matter jurisdiction.

### 1. Motion to Dismiss Pursuant to Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

The court finds that it may exercise jurisdiction over the crossclaims, which all relate directly to Shyvers and the Pollack Co.'s assertions regarding their entitlement to the interpled funds. Crossclaims that arise out of the same transaction or occurrence "may be brought under the court's supplemental subject matter jurisdiction." *See* Wright, et al., 7 Federal Practice & Procedure: Civil 3rd § 1715 at 638–39. In fact, the Fifth Circuit has expressly stated that it "is settled, of course, that ancillary[, which is now part of supplemental,] jurisdiction does extend to cross-claims properly asserted under Rule 13(g), including those filed between competing claimants in a Rule 22 interpleader." *Travelers Ins. Co. v. First Nat'l Bank of Shreveport*, 675 F.2d 633, 638 (5th Cir. 1982); *see Peacock v. Thomas*, 516 U.S. 349, 354 n.5, 116 S. Ct. 862 (1996) ("Congress codified much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367."). Under Rule 13(g), a "pleading may state as a crossclaims any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). The crossclaims all arise directly out of Shyvers and the Pollack Co.'s contention that Shyvers is entitled to the interpled fund.

The Plan Defendants cite *State Farm v. Tashire* in support of their argument that the court does not have subject matter jurisdiction over the crossclaims, The *Tashire* case stemmed from a collision of a bus and pickup in which thirty-five passengers were injured or killed. 386 U.S. at 525. State Farm insured the driver of the truck, and the insurance policy only provided $20,000 per

occurrence, which it anticipated would not cover the damages sought by the injured passengers. *Id.* at 526. The district court issued an injunction that required all suits against the truck driver, State Farm, the bus company, and the bus driver be prosecuted in the interpleader action. *Id.* at 528. The Ninth Circuit reversed, finding that "interpleader was not available in the circumstances of [the *Tashire* case]." *Id.* at 528. The U.S. Supreme Court reversed the Ninth Circuit with regard to the jurisdictional question, but required "substantial modification of the District Court's injunction." *Id.* at 529. The *Tashire* Court determined that "interpleader was never intended . . . to be an all-purpose 'bill of peace,'" and is not meant to remedy "all the vexing problems of multiparty litigation arising out of a mass tort," *id.* at 535, but it made this statement in the context of considering whether the court should entertain claims in a mass tort that may have had "the effect of depriving some claimants of their right to select a forum in which to adjudicate that issue." Wright et al., 7 Federal Practice and Procedure: Civil 3d § 1715 at 644 (discussing *Tashire*). Thus, the *Tashire* case does not impact the analysis in this case as Shyvers and the Pollack Co.'s crossclaims are not meant to fix "all the vexing problems" related to the alleged issues with the Plan; it is merely trying to address the alleged issues with the Plan to the extent they impact the funds they contributed to the Plan.

Because the crossclaims are part of the same transaction or occurrence as Shyvers and the Pollack Co.'s claims to the interpled fund, the court finds that it may exercise supplemental jurisdiction over the crossclaims. The Plan Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## 2.      Motion to Dismiss Pursuant to Rule 12(b)(2) - Lack of Personal Jurisdiction

As to personal jurisdiction, if the court has personal jurisdiction over the defendants due to a "federal statute [that] authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact,' . . . the district court may assert personal

jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966)); *see, e.g.*, *Am. Gen. Life Ins. Co. v. Brothen*, 829 F. Supp. 2d 1369, 1373 & n.7 (N.D. Ga. 2011) ("Service in statutory interpleader action is thus sufficient to establish personal jurisdiction over the named defendant."); *Rubinbaum LLP v. Related Corp. Partners V, L.P.*, 154 F. Supp. 2d 481, 488 (S.D.N.Y. 2001) ("Because the Court has personal jurisdiction over [an interpleader claimant] based on the service of process on them authorized by the nationwide service of process provision in the interpleader statute, the Court also has supplemental personal jurisdiction over them for any state claims arising out of the same common nucleus of operative facts that are at issue in the interpleader action."); *Nat'l Co-op Refinery Ass'n v. Rouse*, 60 B.R. 857, 862 (D. Colo. 1986) ("I hold that, because of the crossclaims' ancillary relation to the underlying subject matter of the original action, personal jurisdiction over Hoyer and Deep Rock on the crossclaims is coextensive with the personal jurisdiction it is undisputed this court has in the interpleader."). *But see Marine Bank & Tr. Co. v. Hamilton Bros., Inc.*, 55 F.R.D. 505, 507 (M.D. Fl. 1972) (noting that "[w]here Congress has expanded the powers of district courts to serve process on non-residents, the courts should not lightly force such persons to accept *in personam* jurisdiction regarding cross-claims" and advocating for a "'cautious application of Rule 13(g) in the light of the unique service of process feature of The Federal Interpleader Act'" (quoting *Hallin v. C.A. Pearson, Inc.*, 34 F.R.D. 499, 503 (N.D. Cal. 1963)). Here, there is no question that the court has personal jurisdiction over the Plan Defendants for the interpleader action. Thus, the court may also exercise personal jurisdiction over them for the related state-court claims. The Plan Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

**C.     Plausibility**

Shyvers and the Pollack Co. assert crossclaims for fraud, negligence, negligent misrepresentation, unjust enrichment, money had and received, breach of contract, breach of fiduciary duty, and a declaratory judgment.  Dkt. 24.  The Plan Defendants argue that all of Shyvers and the Pollack Co.'s crossclaims fail under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 34.

**1.     Legal Standard**

In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.* at 556.

**2.     Analysis of Plausibility of Individual Claims**

**a.     Fraud and Negligent Misrepresentation**

The Plan Defendants argue that the court should dismiss Shyvers and the Pollack Co.'s fraud and negligent misrepresentation claims under Rule 12(b)(6) because Shyvers and the Pollack Co. cannot establish justifiable reliance and these claims thus lack plausibility.  Dkt. 34 at 16.  To state

a claim for fraud under Texas law, a plaintiff must allege that the defendant made a material representation that was false, "it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth," "it intended to induce [the plaintiff] to act upon the representation," and the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). To state a claim for negligent misrepresentation under Texas law, a plaintiff must allege "(1) the representation is made by a defendant in the course of his [or her] business, or in a transaction in which he [or she] has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The Plan Defendants point out that a State Appellate Court, which was considering the trial court's ruling on a summary judgment motion in a related case involving Pollack as an individual, found that Pollack and the related parties in that case could not, as a matter of law, have justifiably relied on an oral representation that contradicts the unambiguous terms of the Plan documents. Dkt. 34 at 15 (citing Dkt. 34, Ex. E at 21–22).

Shyvers and the Pollack Co. point out that their negligent misrepresentation claim is based on representations that Shyvers and the Pollack Co. could access their money and that the Plan was legal and would allow a tax deduction. Dkt. 37 at 13 (quoting Dkt. 24). Additionally, it is based on various alleged nondisclosures, such as failure to disclose that the Plan had failed due to problems with the IRS. *Id.* Similarly, the fraud claims are based on representations that the Plan was legal and would allow a tax deduction and failure to disclose things such as that the employees would receive enormous commissions and that the Plan had failed due to problems with the IRS. *Id.* at 14 (quoting

Dkt. 24). Shyvers and the Pollack Defendants assert in their crossclaims that they justifiably relied on these representations. *See* Dkt. 24.

The State Court decision relied upon by the Plan Defendants finds that Pollack and related parties could not assert that they believed they were the owner or beneficiary of the Policy because the Plan documents unambiguously indicate that the Plan was the owner and beneficiary. Dkt. 34 at 14–15 (quoting and analyzing the State Court opinion). Since the actual alleged misrepresentations here do not necessarily relate to who is the owner or beneficiary of the Policy and instead relate to representations about the Plan's legality and tax consequences as well as various alleged nondisclosures, the Plan Defendants' argument based on the State Court's opinion fails. The Plan Defendants' motion to dismiss the fraud and negligent representation claims under Rule 12(b)(6) is therefore **DENIED**.

### b. Negligence

The Plan Defendants assert that Shyvers and the Pollack Co.'s negligence claim should be dismissed under Rule 12(b)(6) because the assertions describe a negligent misrepresentation claim, not a negligence claim. Dkt. 34 at 16. They additionally argue that the claim is not plausible because Shyvers and the Pollack Co. cannot establish justifiable reliance. *Id.* Shyvers and the Pollack Co. assert that the negligence claims are also, like the fraud and negligent misrepresentation claims, patently not based on the ownership of the policy at issue. Dkt. 37 at 14.

To assert a claim for negligence under Texas law, a plaintiff must allege "1) a legal duty; 2) a breach of that duty; and 3) damages proximately caused from the breach." *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The crossclaims allege that (1) the "Grist Mill Trust [also known as the Plan], Indianapolis Life/Accordia and their agents owed Plaintiffs a duty to act in a reasonable and prudent manner"; (2) the "Grist Mill Trust, Indianapolis Life/Accordia and their agents breached

that duty"; and (3) "this breach proximately caused the occurrences in question and Plaintiffs' damages." Dkt. 37 at 14 (quoting Dkt. 24). They then detail specifics about how the Plan failed to act within the applicable standard of care, failed to disclose conflicts, and negligently recommended Shyvers and the Pollack Co. invest in the Plan even though the Plan would not provide the benefits touted. *Id.* at 15 (quoting Dkt. 24).

Because Shyvers and the Pollack Co. sufficiently state facts to support each element of a negligence claim, the Plan Defendants' motion to dismiss that claim is **DENIED**.

### c.    Unjust Enrichment and Money Had and Received

The Plan Defendants argue that Shyvers and the Pollack Co.'s unjust enrichment and money had and received crossclaims should be dismissed because they are based on Shyvers and the Pollack Co. being "beneficial owners" of the Policy, which the state appellate court found was not the case. Dkt. 34 at 16. They additionally argue that these claims lack plausibility because there is an express contract. *Id.* (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). Shyvers and the Pollack Co. assert that these crossclaims state that Shyvers and the Pollack Co. had a right under the Plan's policies to ten percent of the ownership of the Policy and that Shyvers and the Pollack Co.'s assertion that they have equitable ownership of the policies is correct. Dkt. 37 at 16.

A money had and received claim is "equitable in nature" and "'belongs conceptually to the doctrine of unjust enrichment.'" *Fowler v. U.S. Bank Nat'l Ass'n*, 2 F. Supp. 3d 965, 983 (S.D. Tex. 2014) (Lake, J.) (quoting *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007), and *Edwards v. Mid-Continent Office Distribs, L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied)). To establish a claim for money had and received, a plaintiff must show that the "defendants hold money which in equity and good conscience belongs to [the plaintiff]." *Id.* at 983.

Under Texas law, unjust enrichment "characterizes the result of failing to make restitution or benefits received under circumstances giving rise to an implied or quasi-contract." *TransAmerica Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied). The purpose of the claim is to prevent unconscionable loss to the payor and unjust enrichment to the payee. *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982). An unjust enrichment claim "is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (applying Texas law); *see also Finkelstein*, 933 S.W.2d at 600.

In the amended answer, counterclaims, and crossclaims, Shyvers and the Pollack Co. assert, with regard to the unjust enrichment and money had and received claims, that they are the "intended beneficial owner and beneficiary and/or had a contractual right to the assets of the Indianapolis Life/Accordia policy issued on Shyvers' life." Dkt. 24 at 22, 23. These assertions relate directly to the Plan, which is an express contract governing this subject matter. Accordingly, these quasi-contract remedies fail as a matter of law. The Plan Defendants' motion to dismiss the unjust enrichment and money had and received crossclaims is **GRANTED**.

### d. Breach of Contract

The Plan Defendants argue that the court should dismiss Shyvers and the Pollack Co.'s breach of contract claim because Shyvers and the Pollack Co. are seeking to alter the contractual terms of the Plan by arguing that there was a policy of allowing employees to purchase policies when the Plan documents state that contributions are irrevocable and while the Trustee has discretion to permit a transfer of a policy to an individual policy, it does not contain the policy described by Shyvers and the Pollack Co. Dkt. 34 at 17. Shyvers and the Pollack Co. assert that their breach of contract claim has nothing to do with who is the technical owner of the insurance policy and is

instead based on the Plan's admitted internal policy of allowing a participant to obtain the cash surrender value of the policy in exchange for ten percent of the cash surrender value. Dkt. 37 at 17. They cite testimony from the Trustee in which she states that the ten-percent-policy is not stated in the Policy, it is just what the plan sponsor allows. *Id.* (citing Dkt. 24).

In the amended crossclaims, Shyvers and the Pollack Co. assert that the Plan has this policy providing the cash surrender value of its policies in exchange for ten percent of that value. Dkt. 24. They assert that their breach of contract claim is based on the Plan refusing to abide by this policy when they made a demand for the cash surrender value in exchange for ten percent. *Id.*

At this stage in the litigation, there is insufficient briefing regarding the Plan's terms relating to the discretion of the trustee for the court to determine that the breach of contract claim fails because it is based on the policy relating to the surrender of the Policy rather than the Plan itself. Thus, it appears this claim may be best resolved at the summary judgment stage. The Plan Defendants' motion to dismiss Shyvers and the Pollack Co.'s breach of contract claim is **DENIED**.

### e. Breach of Fiduciary Duty

The Plan Defendants argue that Shyvers and the Pollack Co.'s breach of fiduciary duty claim lacks plausibility because the Employee Retirement Income Security Act of 1974 ("ERISA") does not apply to multiple employer trust plans, including the Plan, which is indisputably a "death benefits plan." Dkt. 34 at 16. The Plan Defendants assert that the Plan is a death benefits plan, not a retirement or pension plan, and the breach of fiduciary duty claim therefore fails because the Plan is not within the scope of ERISA. *Id.* at 17. Shyvers and the Pollack Co. assert that the Plan Defendants are ignoring that the Plan's own policies allow for payments prior to death and that even if the Plan were excluded from ERISA, Texas common law provides that trustees owe a fiduciary

duty to the beneficiaries of a trust. Dkt. 37 at 16 (citing *JP Morgan Chase Bank v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.)).

Under Texas common law, "the imposition of fiduciary duties requires a special relationship." *JP Morgan Chase Bank*, 302 S.W.3d at 536. "Texas courts have long held that certain fiduciary duties are owed by a trustee to a beneficiary of a trust." *Id.* The Plan, however, defines the "beneficiaries" as the person or entity designated by the covered employee to receive death benefits under the Plan. Dkt. 34 at App, p. 3. Thus, there is likely no fiduciary duty under Texas common law.

With regard to ERISA, while multiple employer trusts are not considered ERISA welfare benefit plans, there may still be circumstances where ERISA applies. *See, e.g.*, *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (en banc) ("The courts, congressional committees, and the Secretary [of Labor] uniformly have held" that "a multiple-employer trust—the enterprise—is [not] itself an employee welfare benefit plan."); *id.* at 1372 n.10 (noting that even though the plan is "not an employee benefit welfare plan," it "may nonetheless be subject to ERISA's fiduciary responsibilities if it is a fiduciary to employee benefit plans established or maintained by other entities"); *see also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242–43 (5th Cir. 1990) (noting that prior precedent regarding how multiple employer trusts were not ERISA plans should not be "read . . . so broadly as to exempt all employee welfare benefit plans from ERISA regulation simply because a [multiple employer trust] is connected in some manner with the plan"). The court therefore has insufficient information to conclude that the fiduciary duty claim should be dismissed merely because the Plan is a multiple employer trust or plan.

As far as it being a death benefits plan, the Plan Defendants argue that ERISA covers "employee benefit plans," which they note are defined as an "'employee welfare benefit plan or an

employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.'" Dkt. 34 at 16–27 (quoting 29 U.S.C. § 1002(3)). They contend that payment made upon death and the insurance to provide such payments are "expressly excluded from the definition of 'employee welfare benefit plan or an employee pension benefit plan.'" *Id.* at 17 (quoting 29 U.S.C. § 1002(A), which runs contrary to the numbering scheme in § 1002). However, under 29 U.S.C. § 1002, the terms "employee welfare benefit plan" and "welfare plan"

> mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, *or benefits in the event of* sickness, accident, disability, *death* or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186© of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added). The Plan Defendants do not provide any additional citations to substantiate their assertion that ERISA does not apply to death benefits plans, and it is not the court's burden to research the defendants' case. Accordingly, the Plan Defendants' motion to dismiss the fiduciary duty claims because ERISA does not apply is **DENIED**.

### f.      Declaratory Judgment

The Plan Defendants next move to dismiss Shyvers and the Pollack Co.'s request for a declaratory judgment for failure to state a claim under Rule 12(b)(6). Dkt. 34 at 17. They contend that Shyvers and the Pollack Co. cannot establish plausibility on their other claims, so the request for declaratory relief must also fail. However, since at least some of Shyvers and the Pollack Co.'s

claims survive the Plan Defendants' motion to dismiss, the motion to dismiss the request for declaratory relief is **DENIED**.

### D. Failure to Plead with Particularity

The Plan Defendants argue that the fraud-based crossclaims do not state when the purported misrepresentations were made, and the timing is important because there can be no reliance if the alleged misrepresentations occurred after the transaction already occurred. Dkt. 34 at 18. They additionally argue that the counterclaim does not identify which of the three identified individuals made these purported misrepresentations or if the misrepresentations were made in writing or verbally. *Id.* Thus, they move for dismissal of the fraud-based crossclaims pursuant to Rule 9(b) for failure to plead with particularity. *Id.*

Shyvers and the Pollack Co. point out that the first sentence of their fraud crossclaims states that the misrepresentations were made "[d]irectly prior to Pollack and Shyvers' adoption of the Grist Mill Trust Plan." Dkt. 37 at 18. The crossclaims then specifically names three employees who Shyvers and the Pollack Co. contend made fraudulent representations, including the viability of the trust as a retirement investment and how much access was available to the assets. *Id.* Additionally, they contend that these specific employees of the Plan misrepresented that the Plan was legal and would allow a tax deduction. *Id.*

#### 1. Legal Standard

In addition to meeting the Rule 12(b)(6)-plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.*

(quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185. Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

## 2. Analysis

The court finds that the fraud-based crossclaims sufficiently identify the who, what, where, when, and how of the events at issue. As far as timing, the crossclaims specifically state that the misrepresentations occurred directly prior to the adoption of the Plan. As far as *who* made the misrepresentations, the crossclaim identifies three individuals who allegedly made misrepresentations. The court finds that identifying these three people is a sufficient assertion of "who" to meet the pleading standard under the facts of this case. The Plan Defendants' motion to dismiss pursuant to Rule 9(b) is **DENIED**.

## V. CONCLUSION

The Plan Defendants' motion to dismiss claims under Rules 12(b)(1) and 12(b)(6) (Dkt. 11) is **DENIED**. The Plan Defendants' motion to strike immaterial, impertinent, and scandalous statements in the amended counterclaims in rem and original crossclaims (Dkt. 33) is **DENIED**. The Plan Defendants' amended motion to dismiss the amended counterclaims in rem and the amended crossclaims filed by defendants Shyvers and the Pollack Co. (Dkt. 34) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** with regard to Shyvers and the Pollack Co.'s unjust enrichment and money had and received claims, which are **DISMISSED**. Shyvers and the Pollack Co.'s request to amend is **DENIED**, as amendment would be futile. The motion to dismiss is otherwise **DENIED**.

Signed at Houston, Texas on March 23, 2018.

_____
Gray H. Miller
United States District Judge